**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

DEC 08 2017

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

PROTECTING ARIZONA'S
RESOURCES AND CHILDREN;
FOOTHILLS COMMUNITY
ASSOCIATION; FOOTHILLS CLUB
WEST COMMUNITY ASSOCIATION;
CALABREA HOMEOWNERS
ASSOCIATION; SIERRA CLUB;
PHOENIX MOUNTAINS
PRESERVATION COUNCIL; DON'T
WASTE ARIZONA, INC.; GILA RIVER
ALLIANCE FOR A CLEAN
ENVIRONMENT,

          Plaintiffs-Appellants,

 and

GILA RIVER INDIAN COMMUNITY,

          Plaintiff,

v.

FEDERAL HIGHWAY
ADMINISTRATION; KARLA PETTY, in
her official capacity as the Arizona
Division Administrator of the Federal
Highway Administration; ARIZONA

No. 16-16586

D.C. Nos. 2:15-cv-00893-DJH
2:15-cv-01219-DJH

MEMORANDUM[*]

---

    [*]    This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

DEPARTMENT OF
TRANSPORTATION,

Defendants-Appellees.

GILA RIVER INDIAN COMMUNITY,

Plaintiff-Appellant,

and

PROTECTING ARIZONA'S
RESOURCES AND CHILDREN;
FOOTHILLS COMMUNITY
ASSOCIATION; FOOTHILLS CLUB
WEST COMMUNITY ASSOCIATION;
CALABREA HOMEOWNERS
ASSOCIATION; SIERRA CLUB;
PHOENIX MOUNTAINS
PRESERVATION COUNCIL; DON'T
WASTE ARIZONA, INC.; GILA RIVER
ALLIANCE FOR A CLEAN
ENVIRONMENT,

Plaintiffs,

v.

FEDERAL HIGHWAY
ADMINISTRATION; KARLA PETTY, in
her official capacity as the Arizona
Division Administrator of the Federal
Highway Administration; ARIZONA
DEPARTMENT OF
TRANSPORTATION,

No. 16-16605

D.C. Nos. 2:15-cv-00893-DJH
2:15-cv-01219-DJH

Defendants-Appellees.

Appeal from the United States District Court
for the District of Arizona
Diane J. Humetewa, District Judge, Presiding

Argued and Submitted October 19, 2017
San Francisco, California

Before:  W. FLETCHER and TALLMAN, Circuit Judges, and HOYT,[**] District Judge.

Protecting Arizona's Resources and Children ("PARC"), additional advocacy groups, and the Gila River Indian Community ("GRIC") (hereinafter "Appellants") appeal the district court's order granting the Federal Highway Administration's, *et al.* (hereinafter "Appellees") motion for summary judgment. Appellants claim that Appellees' evaluation and subsequent approval of the Loop 202 South Mountain Freeway ("South Mountain Freeway") violates the National Environmental Policy Act ("NEPA") and Section 4(f) of the Department of Transportation Act.  We have jurisdiction under 28 U.S.C. § 1291 and review the district court's order de novo.  *See Westlands Water Dist. v. U.S. Dep't of Interior*, 376 F.3d 853, 865 (9th Cir. 2004).  Our review of Appellees' compliance with NEPA and Section 4(f) of the Transportation Act is governed by the deferential

[**] The Honorable Kenneth M. Hoyt, United States District Judge for the Southern District of Texas, sitting by designation.

standard of the Administrative Procedure Act, 5 U.S.C. § 701‒06. *See Ocean Advocates v. U.S. Army Corps of Eng'rs*, 402 F.3d 846, 858 (9th Cir. 2005). *Amici*'s argument for a "heightened standard of impact assessment because American Indian populations are affected" has been waived, as it was neither briefed nor raised by Appellants or Appellees. *See Zango, Inc. v. Kaspersky Lab, Inc.*, 568 F.3d 1169, 1176 n.8 (9th Cir. 2009).

An environmental impact statement ("EIS") should "briefly specify the underlying purpose and need to which the agency is responding in proposing the alternatives including the proposed action." 40 C.F.R. § 1502.13. Appellees' purpose and need statement examined projected population growth, housing demand, employment growth, transportation mileage, and transportation capacity deficiencies. These metrics were then used to establish the "underlying purpose and need" and to determine whether a previously proposed freeway was still necessary. *See Honolulutraffic.com v. Fed. Transit Admin.*, 742 F.3d 1222, 1230‒31 (9th Cir. 2014) (upholding a purpose and need statement based on objectives previously identified in a Transportation Plan). The Ninth Circuit provides agencies "considerable discretion" when defining the purpose and need of a project. *Id*. at 1230 (quoting *Nat'l Parks & Conservation Ass'n v. Bureau of*

4

*Land Mgmt.*, 606 F.3d 1058, 1070 (9th Cir. 2010)). Under this standard, Appellees' purpose and need statement complied with NEPA.

An EIS must analyze reasonable or feasible alternatives to the proposed freeway project. *City of Carmel-By-The-Sea v. U.S. Dept. of Transp.*, 123 F.3d 1142, 1155 (9th Cir. 1997) (citing 40 C.F.R. § 1502.14(a)‒(c)). It is not required to consider an infinite range of alternatives. *Id.* Appellees used a multivariable screening process to evaluate reasonable alternatives over the course of thirteen years. Appellees identified three alignment alternatives for the Western Section of the freeway, one alignment alternative for the Eastern Section of the freeway, and a no-action alternative for detailed study. Appellees utilized the "Modal Method" to evaluate each non-freeway alternative, ultimately concluding that the non-freeway alternatives would not address an adequate percentage of the transportation capacity need. When Appellees eliminated an alternative from detailed study they provided reasons for the elimination. 40 C.F.R. § 1502.14. We therefore conclude that Appellees' EIS complied with NEPA in its analysis of alternatives.

A no-action alternative may consider the impact of "continuing with the present course of action until that action is changed." *Ass'n of Pub. Agency Customers, Inc. v. Bonneville Power Admin.*, 126 F.3d 1158, 1188 (9th Cir. 1997) (quoting 46 Fed.Reg. 18026, 18027). Appellees' no-action alternative analysis

assumed that "[e]xisting residential land use patterns and trends would be maintained," and then modeled the effects if the freeway were not built. *See Carmel-By-The-Sea*, 123 F.3d at 1162‒63. Planning agencies may rely on state assessments in drafting an EIS, *see Laguna Greenbelt, Inc. v. U.S. Dept. of Transp.*, 42 F.3d 517, 525‒27 (9th Cir. 1994); *HonoluluTraffic.com*, 742 F.3d at 1231, to generate growth predictions. Appellees used a transportation planning report previously issued by the Maricopa County Association of Governments ("MAG"). The MAG report assumes some future expansion of highways, but does not explicitly rely on the "preferred alternative." Because Appellees explained the basis for their decision to rely upon the socioeconomic projections of the MAG report and disclosed their reliance on the projections, we conclude that their examination of the no-action alternative was not arbitrary or capricious. *See Alaska Oil & Gas Ass'n v. Pritzker*, 840 F.3d 671, 679 (9th Cir. 2016).

Though Appellees declined to analyze the potential impact of a hazardous materials spill, their discussion of hazardous spills was sufficient. An EIS must "discuss the extent to which adverse effects can be avoided," and must include "sufficient detail to ensure that environmental consequences have been fairly evaluated." *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 351‒52 (1989). However, an EIS need not discuss the potential environmental

6

consequences of adverse effects that are remote or highly speculative. *San Luis Obispo Mothers for Peace v. Nuclear Regulatory Comm'n*, 449 F.3d 1016, 1030 (9th Cir. 2006). Appellees determined that "the probability of a spill of hazardous cargo is low," and discussed the extent to which a hazardous spill could be avoided or mitigated. Appellees noted that the potential for such an accident already exists for portions of the Phoenix metropolitan areas and is governed by existing regulations. Appellees outlined Arizona's Department of Transportation's ("ADOT") coordination with emergency services providers responsible for responding to such spills, and Appellees discussed ADOT's ongoing assessment and evaluation of hazardous material restrictions.

Appellees adequately considered the proposed freeway's potential impact on children's health. We give deference to an agency's judgment when the agency undertakes "technical scientific analysis." *Idaho Wool Growers Ass'n v. Vilsack*, 816 F.3d 1095, 1107 (9th Cir. 2016). Appellees performed the conformity analyses mandated by the Clean Air Act, 42 U.S.C. § 7506(c), and concluded that the proposed freeway project would not exceed National Ambient Air Quality Standards ("NAAQS") standards throughout the Study Area. Because NAAQS are set at levels designed to protect sensitive populations, including children, Appellees concluded the South Mountain Freeway would cause no negative health

impact on the general population in the Study Area. In coming to this conclusion, Appellees produced a full Air Quality Technical Report, and performed a quantitative "hot spot" analysis for particulate matter ("PM10") and carbon monoxide ("CO"). "The hot-spot analysis show[ed] that the Preferred Alternative would not cause new violations of the PM10 and CO NAAQS, exacerbate any existing violations of the standard, or delay attainment of the standards or any required interim milestones." Final Environmental Impact Statement ("FEIS") at 4–75 (citing 40 C.F.R. § 93.116(a)).

Appellees adequately analyzed Mobile Source Air Toxic ("MSAT") emissions, in compliance with NEPA. Appellees' MSAT analysis conformed to the FHWA's guidance for roadway projects. Appellees modeled MSAT emissions using the EPA's latest model, documented the Freeway Project's MSAT impacts in the Study Area and two subareas, and provided reasoning for their determination that an analysis of near-roadway emissions was not necessary.

Appellees adequately considered mitigation measures. An EIS should disclose any environmental effects that cannot be avoided and discuss the extent to which steps can be taken to mitigate adverse environmental consequences. *Laguna Greenbelt*, 42 F.3d at 528 (9th Cir. 1994) (citing *Methow Valley Citizens Council*, 490 U.S. at 351–52). Appellees' FEIS proposes several project-specific mitigation

8

measures to address any direct impacts, cumulative impacts, and secondary impacts from the freeway project. Chapter 4 of the FEIS discusses the South Mountain Freeway's potential impact on biological resources and the contiguous nature of the community. Appellees' FEIS proposes mitigation measures to reduce the amount of dust and noise pollution generated from the construction of the freeway project, including the use of watering trucks, windbreaks, dust suppressants and rubberized asphalt. The FEIS examines the wildlife located in the Study Area and discloses that the South Mountain Freeway will fragment the habitats of many species. The FEIS explains that the freeway project will enhance bridges and drainage structures to maintain wildlife connectivity in the affected area. The FEIS also examines the potential displacement of households and businesses, proposing, advisory services for displaced residents, rental assistance for eligible individuals, and land acquisition and relocation assistance pursuant to the Uniform Relocation Act, 42 U.S.C. §§ 4601, *et seq.*, among other measures. "NEPA does not require a fully developed plan that will mitigate all environmental harm before an agency can act; NEPA requires only that mitigation be discussed in sufficient detail to ensure that environmental consequences have been fully evaluated." *Laguna Greenbelt*, 42 F.3d at 528 (citing *Methow Valley Citizens Council*, 490 U.S. at 352). The record thus does not bear out the contention that

the fifteen percent design level hindered Appellees from sufficiently detailing and discussing mitigating measures.

Appellees permissibly determined there was no feasible and prudent alternative to the South Mountain Park Preserve ("SMPP") route of the project, in compliance with Section 4(f). An agency's Section 4(f) evaluation "shall include sufficient supporting documentation to demonstrate why there is no feasible and prudent avoidance alternative and shall summarize the results of all possible planning to minimize harm to the Section 4(f) property." 23 C.F.R. § 774.7(a). Chapter 5 of the FEIS identifies the Section 4(f) properties within the Study Area, describes alternatives that avoid the Section 4(f) properties aside from the SMPP, and concludes that all alternatives avoiding the SMPP are not feasible or prudent. The FEIS further concludes that the no-action alternative will not meet the freeway project's purpose and need and, as a result, is not prudent. *HonoluluTraffic.com*, 742 F.3d at 1232 (quoting 23 C.F.R. § 774.17) (explaining that an alternative is not prudent if, among other things it compromises the project's ability to address the purpose and need to an unreasonable degree). The FEIS determines that alternatives north of South Mountain, including US 60 extension to 1-10, US 60 extension to I-17, and I-10 spur, would adversely affect portions of I-10, US 60, SR 101L, and SR 202L and would cause extensive displacement, in addition to not

meeting the project's purpose and need.  It concludes that alternatives south of

GRIC land, including the SR 85/I-8 alternative, were neither feasible nor prudent

because of their connecting distance from downtown Phoenix.  Finally, because

about two-thirds of the Riggs Road alternative would cut through GRIC land and

GRIC would not allow development on its land, the FEIS determines the Riggs

Road alternative is neither feasible nor prudent.

Appellees conducted planning to minimize harm to the SMPP, related

cultural resources, and the GRIC well sites.  "[A]ll possible planning to minimize

harm" must be conducted for 4(f) compliance.  49 U.S.C. § 303(c)(2).  The record

bears out that Appellees' fifteen percent design completion did not hinder them

from conducting such necessary planning.  Chapter 5 of the FEIS details measures

to minimize harm to the SMPP, including fencing off sacred areas, providing an

alignment for community access, and consulting with GRIC members during the

design phase to continue to attempt to reduce the SMPP land needed for the South

Mountain Freeway.  Appellees also document that they entered into a

Programmatic Agreement that documents "legally binding commitments to the

proper treatment and management of cultural Section 4(f) resources and by Section

106" of the National Historic Preservation Act.  *See HonoluluTraffic.com*, 742

F.3d at 1234 (citing 73 Fed.Reg. 13368-01, 13379-80 (2008) (recommending such an agreements as "appropriate and desirable")).

Finally, the FEIS contains a thorough discussion of the South Mountain Freeway's potential impacts to GRIC groundwater wells. Appellees included in the design and construction contract a binding agreement that requires the contractor to "avoid and preserve the GRIC well properties, GRIC's legal access to GRIC well properties, and the water, wells, pipes, and ditches located therein." Further, pursuant to 23 C.F.R. §§ 771.129 and 771.130, Appellees may re-evaluate and, if necessary, prepare a supplemental EIS if any alterations to the freeway alignment due to avoidance of the wells would result in significant environmental impacts that were not previously evaluated.

**AFFIRMED.**